IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD L. TSOSIE,                          :
                                           :
        Plaintiff                          :
                                           :        CIVIL NO. 3:CV-10-0255
    v.                                     :
                                           :        (Judge Caputo)
WARDEN RONNIE HOLT, *et al.*,              :
                                           :
        Defendants                         :

M E M O R A N D U M

I.     Introduction

On February 2, 2010, Plaintiff Ronald L. Tsosie, a federal prisoner

incarcerated at the Canaan United States Penitentiary  (USP-Canaan), in Waymart,

Pennsylvania, filed this *Bivens*[1] action pursuant to 28 U.S.C. § 1331.  Named as

Defendants are the following Bureau of Prisons (BOP) employees:  BOP Northeast

Regional Counsel Henry Sadowski; BOP Northeast Regional Director J. L. Norwood;

BOP Director Harley Lappin; Warden Ronnie Holt; Lieutenant (Lt.) Herbert Ousley;

Lt. Richard Brassard; Senior Officer Christopher Heenan; Senior Officer Specialist

---

[1] In *Bivens*, the Supreme Court held that a plaintiff may obtain damages for injuries caused by a federal agent acting "under color of his authority" in violation of a claimant's constitutionally protected rights.  *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395, 91 S.Ct. 1999, 2004, 29 L.Ed.2d 619 (1971). *Bivens* actions are the federal counterpart to § 1983 claims brought against state officials. *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) (citing *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001)).  "[C]ourts have generally relied upon the principles developed in the case law applying section 1983 to establish the outer perimeters of a *Bivens* claim against federal officials."  *Schrob v. Catterson*, 948 F.2d 1402, 1409 (3d Cir. 1991).

Shanyn Shanley; Senior Officer Ryan Rosencrance; Senior Officer Michael Moran; Senior Officer Joseph Voda; Corrections Officer (CO) Stuffle, and Senior Officer Donovan Provost.

Mr. Tsosie filed this action after he was placed in a Special Housing Unit (SHU) cell with a non-functioning toilet for three days in October 2009.  *See* Doc. 13, Am. Compl.  He also claims that "the administration deliberately erase[d] all of [his approved telephone] phone numbers," which resulted in his lost opportunity to speak with his father before he passed.  *Id*.  Mr. Tsosie alleges that the Defendants took these actions in retaliation for his involvement in a May 2009 incident where another inmate was assaulted, and a staff member was injured.

Presently before the Court is the Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment.  Doc. 42.  Mr. Tsosie has filed a response to the motion, and Defendants have filed a reply brief.  Thus, the motion is ripe for disposition.  For the reasons set forth below, the Defendants' motion for summary judgment will be granted.


## II.    Background

### A.    Mr. Tsosie's New Criminal Charge Stemming from Assault in May 2009.

On May 17, 2009, while incarcerated at USP-Canaan, Mr. Tsosie and two other inmates assaulted another inmate.  *See* Doc. 48, Defs.' Statement of Material

Facts (DSMF) at ¶2; Doc. 59, Pl.'s Statement of Material Facts (PSMF) at pp 83-96,[2]

¶2.  The inmate victim was assaulted with a lock tied to a sheet or belt.  DSMF at

¶2; PSMF at ¶3.  When staff arrived at the scene of the assault, Mr. Tsosie and the

others did not initially heed the officers' orders to get to the ground.  DSMF ¶¶4-5;

PSMF ¶¶4-5.  Eventually, Mr. Tsosie and the other assailants were handcuffed.

DSMF ¶6; PSMF ¶6.  Mr. Tsosie, and the other aggressors were criminally charged

with conspiracy to assault; assault with a dangerous weapon; and

assaulting/resisting/impeding officers/employees, and traffic in contraband articles.

DSMF ¶5; PSMF ¶5.  On March 16, 2010, Mr. Tsosie pled guilty to assault with a

dangerous weapon and was sentenced to 33 months imprisonment, to run

consecutive to his previously imposed sentence.  DSMF ¶9; PSMF ¶¶9-10.  All other

charges were dismissed.


### B.    Three Days in SHU Cell with Malfunctioning Toilet.

Mr. Tsosie is a Native American.  Doc. 13, Am. Compl. at p. 3.  On Friday,

October 23, 2009, between 12:30 p.m. and 2:00 p.m., Mr. Tsosie returned from the

Lackawanna County Prison to USP-Canaan.  *Id*.; DSMF ¶10.  Plaintiff alleges that

Officers Heenan, Rosencrance and Moran knowingly placed him and another

inmate in a SHU cell with a toilet they could not flush.  DSMF ¶11.  However,

corrections officers were able to remotely flush the toilet from outside of the cell.

---

[2]  Unless otherwise noted, all citations to the record reflect the docket number and page number assigned by the Electronic Case Filing system (ECF) rather than the page number of the original document.

DSMF ¶12.  At least once during his shift that day, Officer Heenan flushed the toilet in Mr. Tsosie's cell.  PSMF ¶19.

On the next shift, between 2 p.m. and 10 p.m., Officer Provost "was the head officer for the SHU."  Doc. 13 at p. 5; PSMF ¶22.  Mr. Tsosie sent an inmate request slip to him about the broken toilet, but he "ignored the request".  Doc. 13 at p. 7; PSMR 22; DSMF ¶ 15.  Later that night, when Lt. Ousley made his rounds on the SHU and learned of the malfunctioning toilet, he told Mr. Tsosie "he would look into another cell" for him.  DSMF ¶14; PSMF ¶23.

Plaintiff asked Officers Voda and Stuffle to manually flush the toilet but they "deliberately walked by as not hearing plaintiff."  DSMF ¶16.  Officer Stuffle is alleged to have turned the water completely off after getting upset with Plaintiff's constant requests to flush his toilet.  Doc. 13 at p. 7.  Mr. Tsosie affirms that Officer Voda finally flushed the toilet, but only after the smell of feces emanated from the cell.  Doc. 13 at p. 13; PSMF ¶28; DSMF ¶18.

The next day, Saturday, October 24, 2009, Mr. Tsosie spoke again to Lt. Ousley about the broken toilet and asked to be moved to a different cell.  DSMF ¶17; Doc. 13 at p. 5.  He was not moved.

On Sunday, October 25, 2009, Officer Shanley was the officer in charge of the SHU.  Mr. Tsosie sent an inmate request slip to her about his housing problems, but the request went unanswered.  PSMF ¶32.  Around 5:00 p.m. or 6:00 p.m., Plaintiff complained about the broken toilet to Lt. Brassard but was told nothing could be done until Monday when maintenance staff returned.  DSMF ¶¶20-21; Doc. 13 at p. 5; PSMF ¶33.  The toilet was flushed once by Officer Brandenburg the

evening of October 25, 2009.  PSMF ¶34.

On Monday, October 26, 2009, around 4:00 p.m., Mr. Tsosie spoke to Officer

Shanley then moved Mr. Tsosie and his cellmate to another cell in the SHU "that

was open all this time."  Doc. 13 at p.7; DSMF ¶¶ 22-23; PSMF ¶35 and ¶ 37.

Officer Moran declares that he worked the 6:00 a.m. to 2:00 p.m. shift at

USP-Canaan on October 23 through 26, 2009.  DSMF ¶29.  On October 23, 2009,

Officer Stuffle worked overtime on a medical trip escort and was not in the SHU at

any time that day.  DSMF ¶¶31-32.  Officer Stuffle, however, did work the

afternoon/evening shift in the SHU on October 24 and 25, 2009.  DSMF ¶33.  He

recalls the SHU was full of inmates on those dates and denies shutting the water to

Mr. Tsosie's cell off at any time.  DSMF ¶¶35-36.


**C.      Erasure of Mr. Tsosie's Telephone Numbers.**

Mr. Tsosie alleges that "[t]he administration deliberately erased all my phone

numbers sometime between 10/7 and 10/13 before [he] went to Court ... [he] did not

get his phone numbers put back until January."  Doc. 13 at p. 8; DSMF ¶26.  As a

result, he did not learn of his father's passing and lost the opportunity to speak with

him one last time before he died.  Doc. 13 at p. 8; DSMF ¶27.


**D.      Mr. Tsosie's Exhaustion of Administrative Remedies.**

On November 22, 2009, Mr. Tsosie attempted to informally resolve the issue

related to his SHU placement in a cell with a broken toilet for three days.  Doc. 47-4

-5-

at pp. 70-71.  Mr. Tsosie's counselor advised him that his allegations "are taken seriously and will be given an appropriate amount of review and/or investigation . . . we are unable to disclose to you any findings or result of our review in this matter." *Id*. at 72.  Plaintiff then filed a formal administrative remedy with Warden Holt on November 30, 2009, complaining of being placed in a cell with a non-flushing toilet as well as the erasure of his phone numbers.  *Id*. at p. 68, Admin. Remedy No. 568524-F1; DSMF at ¶50.  Warden Holt responded to the grievance on December 22, 2009.  *Id*. at p. 58 and p. 69.  Mr. Tsosie was advised that if he was dissatisfied with Warden Holt's response he could file an appeal with the Regional Director.  *Id*. Mr. Tsosie's appeal to the Regional Director was received on January 13, 2010, and rejected on January 19, 2010, as untimely.  *Id*. at p. 60; DSMF ¶¶51-52.  BOP records indicate that Mr. Tsosie did not seek an extension of time to file his regional appeal, nor did he appeal the rejection to the BOP Central Office.  DSMF at ¶53.

## III.    Standard of Review

### A.    Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary

element, *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965).  The pleading standard of Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," but "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S.Ct. 1937, 1959, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at ___, 129 S.Ct. at 1950.

Thus, when determining the sufficiency of a complaint, a court must undertake a three-part inquiry.  *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  The inquiry involves: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  *Id.*

### B.    Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In pertinent part, parties moving for, or opposing, summary judgment must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to nonmoving party.  *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

      "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law.  *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510).  "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).  The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury might return a verdict in the nonmoving party's favor. *Liberty Lobby*, 477 U.S. at 256-57, 106 S.Ct. at 2514.  "The non-moving party cannot rest on mere pleadings or allegations," *El v. Southeastern Pa. Transp.*

*Auth.*, 479 F.3d 232, 238 (3d Cir. 2007), but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.* , 260 F.3d 228, 231 - 232 (3d Cir. 2001). Allegations made without evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000). "Conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002). Hearsay testimony contained in affidavits or statements that would be inadmissible at trial may not be included in an affidavit to oppose summary judgment. *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Comp.* , 998 F.2d 1224, 1234 n. 9 (3d Cir. 1993). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

IV.     **Discussion**

A.     **Exhaustion of Administrative Remedies.**

Under the Prison Litigation Reform Act (PLRA), before a prisoner may bring a civil rights action pursuant to 42 U.S.C. § 1983, or any other federal law, he must exhaust all available administrative remedies. *See* 42 U.S.C. § 1997e; *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.C. 983, 988, 152 L.Ed.2d 12 (2002). There is no "futility" exception to the administrative exhaustion requirement. *Ahmed v. Dragovich*, 297 F.3d 201, 206 (3d Cir. 2002)(citing *Nyhuis v. Reno*, 204 F.3d 65, 78 (3d Cir. 2000)). The exhaustion requirement of the PLRA is one of "proper

exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006).  Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in the procedural default of a claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).  Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil-rights action.  *Oriakhi v. United States*, 165 F. App'x 991, 993  (3d Cir. 2006)(per curiam)(nonprecedential)(citing *Ahmed*, 297 F.3d at 209 & n. 9).

Retaliation is a separate claim and prisoners must raise the specific claim of retaliation in their prison grievance in order to exhaust administrative remedies.  *See Boyd v. United States,* 396 F. App'x 793, 796 (3d Cir. 2010)("[T]o pursue a claim in federal court based on retaliation, [a prisoner] must first have exhausted administrative remedies for that claim."); *see also Hoffenberg v. Provost*, 154 F. App'x 307, 311 (3d Cir. 2005)(retaliation claim must be presented and exhausted as a separate claim from underlying assault claim).  The exhaustion requirement is mandatory and cannot be excused for "'sensitive' subject matter or 'fear of retaliation . . .'" *Pena-Ruiz v. Solorzano*, 281 F. App'x 110, 113 (3d Cir. 2008)(per curiam) (nonprecedential).

All individuals incarcerated in institutions operated by the BOP may challenge any aspect of their confinement using the BOP's procedures for filing a Request for an Administrative Remedy.  DSMF ¶¶38-39; *see* 28 C.F.R. § 542.10, et seq. (2004); First, an inmate is to informally present the issue of concern to his unit team through

an informal resolution attempt.  DSMF ¶ 41; *see* 28 C.F.R. § 542.13.  If that does

not resolve the issue, the inmate must submit a formal request for administrative

relief (BP-9) to the Warden. DSMF ¶42; *see* 28 C.F.R. § 542.14.  The warden is

then to respond to the inmate's complaint within 20 calendar days.  DSMF ¶43; 28

C.F.R. § 542.18.  An inmate dissatisfied with the Warden's response may submit an

appeal to the Regional Director (BP-10) within 20 calendar days.  DSMF ¶44; *see* §

542.15(a).  If dissatisfied with the response from the Regional Director, the inmate

may submit an appeal to the BOP's Central Office  (BP-11) within 30 calendar days.

DSMF ¶45.  No administrative appeal is considered to have been fully and finally

exhausted until it has been considered by the BOP's Central Office.  DSMF ¶46.

　　　In support of their motion for summary judgment in this case, the Defendants

submit the declaration of John E. Wallace, Esq., an attorney-advisor with the United

States Department of Justice, Federal Bureau of Prisons and the primary legal

advisor to USP-Canaan, who has access to all BOP files relevant to the

administrative grievance process.  *See* Doc. 47-4, Wallace Decl. at p. 12-83.

Wallace attaches to his declaration a record of Administrative Remedy Generalized

Retrieval of Mr. Tsosie's Administrative Remedy filings as of September 15, 2010.

*See* Doc 47-4 at pp. 35-67.

　　　On November 22, 2009, Mr. Tsosie filed an informal resolution related to his

placement in a cell without a working toilet, the erasure of his phone numbers, and

denial of access to the law library and haircuts in retaliation for his alleged assault of

a USP-Canaan officer.  Doc. 47-2 at pp. 70-71.  On November 30, 2009, he filed

Administrative Remedy 56824-F1 alleging his phone numbers were erased and he

is being treated unfairly by staff because of his unresolved criminal assault charges. *Id*. at p. 68.  The Warden responded on December 22, 2009.  *Id*. at p. 69.  Warden Holt wrote that "[t]he investigation into [his] conduct is still pending criminal [via his] proceedings" and then when he went out on writ to face these new charges he was "advised of the status of the investigation."  *Id*.  With respect to the erasure of his telephone numbers, Warden Holt said he was "unable to disclose any findings or the result of [the BOP's] review concerning this matter."  *Id*.  Mr. Tsosie was advised of his appeal rights.  *Id*.  He appealed to the Regional Deputy but his appeal was rejected as untimely.  *Id*. at p. 60.  Attorney Wallace declares that "[r]ecords indicate that Tsosie did not seek an extension of time to file the regional appeal, nor did he appeal the rejection to the next level."  *Id*. at p. 9.  Thus, Defendants argue his grievance is unexhausted, and therefore the claims contained within are subject to dismissal.

In his opposition brief, Mr. Tsosie argues that he is not required to exhaust administrative remedies that are not available to him.  However, Plaintiff has failed to support his conclusory statement that the administrative remedy process was unavailable to him.  Mr. Tsosie's only assertion to support his theory of unavailability is that as an SHU inmate, he must rely on his counselor to provide him with the correct forms for each stage of the remedy process.  Doc. 59 at p. 9.  This "leaves an inmate with no choice but wait another week to receive the next available remedy" form.  *Id*.  This, however, does not explain why Mr. Tsosie did not seek an extension of time to file his appeal to the Regional Director on this basis or failed to

appeal the rejection of his appeal as untimely to the next, and final level, of review. Clearly, the documents submitted by Defendants as to Mr. Tsosie's use of the administrative remedy process demonstrate his familiarity, use, and the availability of the administrative remedy process to him.  Additionally, it reveals his ability to seek enlargements of time and appeal to final review.  Unfortunately, Mr. Tsosie did not exercise this strategy when pursuing Administrative Remedy 56824.

The record before the Court as to Mr. Tsosie's exhaustion efforts is clear and uncontested.  Plaintiff failed to properly exhaust his available administrative remedies before filing this action, and thus the Defendant are entitled to summary judgment on all claims.  *See  Oriakhi v. United States*, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

### B.     Erasure of Telephone Numbers.[3]

Mr. Tsosie alleges that "the administration deliberately erase[d] all my phone numbers sometime between 10/7 and 10/13 before I went to Court."  Doc. 13 at p.8. As a result, Plaintiff did not learn of his father's passing and lost the opportunity to speak to him one last time.  *Id*.  The constitutional right at issue has been described as the right to communicate with people outside prison walls, and "a telephone provides a means of exercising this right."  *Almahdi v. Ashcroft*, 310 F. App'x 519, 521–22 (3d Cir. 2009) (quoting *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir.

---

[3]  Although the Court has determined Mr. Tsosie failed to exhaust his administrative remedies as to the claims raised in the Amended Complaint, the Court will nonetheless address the merits of defendants' equally successful alternative arguments as to the substance of the underlying constitutional claims.

2002)).

To state a viable § 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 580-81 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs.... Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). Individual liability can only be imposed if the state actor played an "affirmative part" in the complained-of misconduct. *Id.* Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

Based on the above legal standards, any claim against the Defendants for an alleged First Amendment violation due to the erasure of Mr. Tsosie's telephone list is subject to dismissal. Nowhere in the Amended Complaint does Mr. Tsosie allege that any of the named Defendants played an affirmative role in the alleged intentional erasure of his telephone list. Consequently, the defendants' motion to dismiss will be granted with respect to this claim as to all defendants.

**C.      Placement in SHU Cell with Broken Toilet for Three Days**.

The Eighth Amendment prohibits cruel and unusual punishment, which includes the unnecessary and wanton infliction of pain by prison officials.  U.S. Const. amend. VIII; *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  However, not all deficiencies and inadequacies in prison conditions amount to a violation of an inmate's constitutional rights.  Likewise, the Eighth Amendment does not mandate that prisons be free from discomfort.  *Id*. at 832, 114 S.Ct. at 1976.

To sufficiently allege an Eighth Amendment conditions of confinement claim, a plaintiff must allege: (1) that the deprivation is sufficiently serious; and (2) that the defendant was deliberately indifferent to this deprivation.  *Young v. Quinlan*, 960 F.2d 351, 359-60 (3d Cir. 1992) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-303, 111 S.Ct. 2321, 2323-2326, 115 L.Ed.2d 271 (1991)).  As to the objective component, an Eight Amendment violation occurs when an inmate is deprived of "the minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981).   "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.  To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."  *Id.*, 452 U.S. at 347, 101 S.Ct. at 2399.  The Eighth Amendment does not mandate that prisons be free of discomfort.  *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d. 156 (1992).  Only "extreme deprivations" are sufficient to make out an

-15-

Eighth Amendment claim. *Id.*  Again, whether the required showing has been made depends on a number of factors "includ[ing] the length of confinement, the amount of time prisoners must spend in their cells each day, the opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such as plumbing, ventilation and showers." *Tillery v. Owens*, 907 F.2d 418, 427 (3d Cir.1990).

As to the subjective component, the question is whether the defendant acted with deliberate indifference to the inmate's health or safety. *Hudson*, 503 U.S. at 8, 112 S.Ct. at 999.  Thus, when considering a claim under the Eight Amendment, courts must inquire as to whether "the officials act[ed] with a sufficiently culpable state of mind" and whether the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.*

In reviewing this type of claim, the courts have stressed the importance of the duration of the complainant's exposure to the alleged unconstitutional conditions, and a review of the "totality of the circumstances," as being critical in the Eighth Amendment determination, and not just the allegedly egregious conditions themselves. *Rhodes*, 452 U.S. at 362-33, 101 S.Ct. at 2407.  The denial of toilet facilities, or exposure to one's own waste, alone does not automatically equate to an Eighth Amendment violation.  *See Wheeler v. Walker,* 303 F. App'x 365, 368 (7th Cir.2008) (rejecting Eighth Amendment claim where prisoner alleged that during a two week period he had only a thin blanket to protect him from frigid air entering his unheated cell, roaches crawled over him while he tried to sleep on badly torn mattress, urine and waste "encrusted" sink and toilet, trash, dirt, and debris covered

-16-

floors, walls, and sink, and stench of waste came from broken toilet); *Davis v. Scott*, 157 F.3d 1003, 1004 (5th Cir.1998) (holding three day placement in cell with blood on walls and excrement on floors did not meet Eighth Amendment's objective component); and *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996)(inmate confined in cell for four days "made to endure the stench of [his] own feces and urine," did not rise to the level of an Eighth Amendment violation).

In this case, examining Mr. Tsosie's claims under the above identified principles reveals that he fails to satisfy the objective component necessary to establish an Eighth Amendment conditions of confinement claim.[4]  While the Court accepts that the odor caused by the excrement in the unflushed toilet was intensely unpleasant, a review of the totality of the circumstances of his confinement as set forth in the record, does not demonstrate any credible threat to Mr. Tsosie's health or safety.  Specifically, the total period of his exposure to the challenged conditions as a whole amounted to 72 hours.  During this time, according  to Mr. Tsosie, prison officials remotely flushed his toilet three times.  While each of these flushes afforded only temporary relief, it still provided some level of relief from his exposure to the smell of human waste.  Additionally, Mr. Tsosie does not allege any facts indicating that his limited period of exposure to the smell of feces and urine caused him any

---

[4]  Although Mr. Tsosie describes himself as being a pretrial detainee, he is not.  At all times relevant to this action, Mr. Tsosie was incarcerated at USP-Canaan.  Accordingly, he is, and was, a convicted prisoner since at least his admission to the BOP.  The fact that he incurred additional criminal charges while in jail, and those charges were yet unresolved when he was housed in the SHU, does not turn back time and convert his status to that of a pretrial detainee.  Thus, his conditions of confinement claims must be considered under the Eighth Amendment as opposed to the due process clause of the Fourteenth Amendment, which is the applicable standard for pretrial detainees.  *See Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005).

-17-

serious or significant harm.  In fact, Mr. Tsosie does not seek damages for mental or emotional distress but seeks compensation strictly for the alleged violation of his constitutional rights.  *See* Doc. 13 at p.5; Doc. 14 at p. 6.

Based on the undisputed facts as to the limited 72 hour duration of Mr. Tsosie's stay in the SHU cell with a malfunctioning toilet, Mr. Tsosie has failed to demonstrate that he was deprived of the minimal civilized measures of the necessities of life.  Thus, Defendants are entitled to summary judgment on this claim.

### D.      Retaliation.

Mr. Tsosie alleges that defendants placed him in the SHU cell with a broken toilet, and failed to place him in an available cell with a functioning toilet, in retaliation for his May 2009 involvement in a group assault on another inmate during which an officer was assaulted by one of Plaintiff's co-defendants.

"Retaliation for constitutionally-protected activity is itself a violation of rights secured by the Constitution actionable under section 1983."  *White v. Napoleon*, 897 F.2d 103, 112–13 (3d Cir. 1990).  To prevail on a retaliation claim, the prisoner must prove: (1) he engaged in constitutionally protected activity; (2) he suffered "some adverse action" by a state actor; and (3) "a causal link between the exercise of [the] constitutional right[ ] and the adverse action taken."  *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  Once a prisoner establishes a prima facie case, the burden shifts to the defendant to show by a preponderance of the evidence that the same

disciplinary action would have been taken even in the absence of protected activity. *Rauser*, 241 F.3d at 334.

Participation in an assault of another inmate or prison official is not a protected activity, and thus cannot form the basis of a retaliation claim. Mr. Tsosie does not argue otherwise. Because attempting to assault another inmate, or a corrections officer, is not protected conduct under the First Amendment, Mr. Tsosie fails to state a claim of retaliation. Accordingly, Defendants are entitled to summary judgment on this claim.

### E.      Motions to Admit Additional Documents.

Also pending before the Court is Mr. Tsosie's Motion to Admit Documents, Motion to Admit Newly Discovered Evidence, and Motion to Supplement. *See* Docs. 61, 65 and 66. Local Rule 7.5 requires a party to file a brief in support of any pretrial motion. Mr. Tsosie did not file a brief in support of any of his motions, therefore they are deemed withdrawn.

Nonetheless, Mr. Tsosie's first motion to submit additional documents related to his claim that "he did write a letter to the Court addressing the violations that transpired while on pre-trial detainee status." Doc. 61. The Court has already established that Mr. Tsosie was not a pretrial detainee prior to pleading guilty to his new assault charges stemming from his May 2009 assault of another inmate. Additionally, his letter to Judge Munley, who presided over his criminal trial, regarding the erasure of his telephone numbers is irrelevant as we dismissed that claim due to Mr. Tsosie's failure to allege any of the named Defendants were

responsible for that act and his failure to exhaust his administrative remedies as to this claim.

In his second motion to admit documents, Doc. 65, seeks to contest the factual allegations of Officer Moran's declaration which Defendants submitted in support of their motion for summary judgment.  Plaintiff wishes to submit documents that will contradict Officer Moran's statements that he was not working the shift he was placed in the SHU cell with the broken toilet.  *See* Doc. 65 at p. 65.  Clearly, Officer Moran is under the impression that Mr. Tsosie was placed in the SHU cell during evening shift and not during his 6 a.m. to 2 p.m. shift.  Mr. Tsosie presents documentary evidence which reflects that he was placed in the SHU cell around 1:39 p.m., which would be during CO Moran's shift.  While this is a dispute of fact between the parties, it is not material to our decision because Mr. Tsosie's Eighth Amendment claim is subject to dismissal due to his failure to exhaust his available administrative remedies, and because the temporary nature of his placement in a cell with a broken toilet does not rise to the level of an Eighth Amendment claim. Therefore, the motions to submit additional documentation will be denied.

An appropriate Order follows.

/s/ A. Richard Caputo
**A. RICHARD CAPUTO**
**United States District Judge**

**Date: April 12, 2012**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RONALD L. TSOSIE,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL NO. 3:CV-10-0255** |
| **v.** | : | |
| | : | **(Judge Caputo)** |
| **WARDEN RONNIE HOLT, *et al.*,** | : | |
| | : | |
| **Defendants** | : | |

**O R D E R**

**AND NOW**, this __12th__ day of **APRIL, 2012**, in accordance with the accompanying Memorandum, it is **ORDERED** that:

1.   Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment (Doc. 42) is GRANTED.

2.   The claims against defendants Holt, Ousley, Brassard, Heenan, Shanley, Rosencrance, Moran, Voda, Stuffle, Provost, Sadowski, Norwood, Lappin, the Bureau of Prisons and the United States are hereby dismissed due to Plaintiff's failure to exhaust his administrative remedies and failure to state a claim.

3.   The Clerk of Court is directed to enter judgment in favor of defendants Holt, Ousley, Brassard, Heenan, Shanley, Rosencrance, Moran, Voda, Stuffle, Provost, Sadowski, Norwood, Lappin, the Bureau of Prisons and the United States against Plaintiff.

4.   Mr. Tsosie's Motion to Admit (Doc. 61) is DENIED.

5.      Mr. Tsosie's Motion to Admit Newly Discovered Evidence
        (Doc. 65) is DENIED.

6.      Mr. Tsosie's Motion to Supplement the Amended
        Complaint (Doc. 66) is DENIED.

7.      The Clerk of Court shall close this file.


                            **/s/ A. Richard Caputo**
                            **A. RICHARD CAPUTO**
                            **United States District Judge**